Cattron, Inc., Appellee, *v.*
Overhead Crane & Hoist, Inc.;
A-One Overhead Crane & Hoist,
Inc., Appellant.

(No. C-860068 — Decided
January 14, 1987.)

*Schulzinger & Immerman Co.,
L.P.A.,* and *Harvey A. Immerman,* for
appellee.

*Droder & Miller Co., L.P.A., A.
Dennis Miller* and *Robert L. Goldman,*
for appellant.

*Per Curiam.* This appeal is taken from the judgment of the trial court finding defendant-appellant A-One Overhead Crane & Hoist, Inc. ("A-One") jointly and severally liable for a debt owed by its predecessor, defendant Overhead Crane & Hoist, Inc., to plaintiff-appellee Cattron, Inc. We conclude that this finding was erroneous and we accordingly reverse the judgment of the trial court as it applies to appellant A-One.

The essential facts are not in dispute. In 1970, William Galster formed Crane-Hoist, Inc. for the purpose of selling overhead cranes and hoists. Ronald Hogden began working for Crane-Hoist in 1971, and he eventually became sales manager. In January 1983, Galster formed Overhead Crane & Hoist, Inc. ("Overhead"); he was the sole shareholder of both corporations.

In March 1983, Mosler Safe Company sent a purchase order for crane equipment and labor to Crane-Hoist. The newly formed corporation, Overhead, in turn sent a purchase order for a radio control system for the crane ordered by Mosler to appellee Cattron, a manufacturer and supplier of radio remote controls for overhead cranes. Cattron shipped the radio controls directly to Mosler and sent an invoice for this equipment to Overhead in the amount of $7,214.27. Mosler paid for all of its crane equipment (including the radio controls) in two installments, the first to Crane-Hoist and the second to Overhead. However, the $7,214.27 was not forwarded to Cattron.

Meanwhile, sometime in 1983 Galster wrote an undated letter to all Overhead employees informing them that he had decided to close down his companies and leave the crane business before the end of the summer of 1983. Galster granted Hogden, the sales manager, authority to sign checks written on Overhead's corporate checking account for the purpose of closing down the company.

In June 1983, Hogden decided to enter the crane and hoist business for himself, and he signed the articles of incorporation for his new company, A-One Overhead Crane & Hoist, Inc. The certificate of incorporation for A-One was issued on July 5, 1983. Also in July, Hogden and an associate, Bob Profitt, wrote a letter on behalf of A-One to "all valued vendors, past and present," informing them that Galster had left the business and that A-One had been formed with Hogden as president.

Cattron never received payment for the radio control equipment shipped to Mosler. On July 30, 1984, Cattron filed its complaint against both Overhead and A-One seeking $7,214.27 in damages, representing the amount of the invoice for the radio control equipment. After a trial without a jury, the trial court entered

judgment in favor of Cattron against both Overhead and A-One, jointly and severally.

From that judgment A-One has taken this timely appeal, asserting in a single assignment of error that the trial court erred in finding it liable for the debt of Overhead, which A-One argues is a separate and distinct corporation. We find the assignment of error to be meritorious.

When one corporation sells or otherwise transfers its assets to another corporation, the well-settled general rule is that the transferee corporation is not liable for the debts and liabilities of the transferor, unless: (1) the transferee expressly or impliedly agrees to assume the transferor's debts and obligations; (2) the transaction is merely a consolidation or merger; (3) the transaction is fraudulent in fact; or (4) the transferee is merely a continuation of the transferor. 15 Fletcher, Cyclopedia of the Law of Private Corporations (Rev. Perm. Ed. 1983) 188-189, Section 7122. See *Tucker* v. *Webb Corp.* (Feb. 24, 1982), Hamilton App. No. C-810340, unreported, reversed on other grounds (1983), 4 Ohio St. 3d 121, 4 OBR 367, 447 N.E. 2d 100 (applying the general rule of nonliability and holding that none of the enumerated exceptions applied).

In the present case, although Cattron argues that it may be inferred that Hogden transferred assets from Overhead to A-One under his check-writing authority, there is no evidence in the record to support such an inference. Hogden testified that the available funds in Overhead's checking account were used only to finish Overhead's contracts, to pay salaries and to pay creditors of Overhead. In addition, Bob Profitt, an employee of Overhead and A-One, testified that to his knowledge there was no transfer of funds from Overhead to A-One.

Our research has revealed no Ohio cases in which a creditor has at-tempted to hold a successor corporation liable for the debts of its predecessor in the absence of a transfer of assets. However, in *Christiansen* v. *Mechanical Contractors Bid Depository* (C.A.10, 1968), 404 F. 2d 324, the court was confronted with this set of facts and we find its reasoning to be sound. That court first noted that, generally, a creditor of a corporation may follow property transferred by that corporation to another corporation and may satisfy a debt out of that property, where the second corporation is merely a continuation of the old corporation. However, the court held that this principle did not apply where there was no transfer of property or assets to the new corporation, even though the executive manager of the old corporation joined with others in forming the new corporation which offered similar services, because there was no transfer of any property right. *Id.* at 325.

Similarly, in the present case there was no evidence of a transfer of property or assets from Overhead to A-One, even though Hogden, the sales manager of Overhead, formed A-One to operate in the same business as Overhead. We therefore conclude that in the absence of such a transfer, A-One was a separate and distinct corporation, and that the trial court erred in holding A-One liable for Overhead's debt to Cattron. The single assignment of error is sustained.

Accordingly, that part of the judgment of the trial court holding appellant A-One Overhead Crane & Hoist, Inc. jointly and severally liable in the amount of $7,214.27 is reversed and, pursuant to App. R. 12(B), final judgment is hereby entered in favor of A-One.

*Judgment accordingly.*

DOAN, P.J., KEEFE and BLACK, JJ., concur.