ERDY et al., Appellees,

v.

COLUMBUS PARAPROFESSIONAL INSTITUTE, Appellee;

Technology Education Corporation, Appellant.

[Cite as *Erdy v. Columbus Paraprofessional Inst.* (1991), 74 Ohio App.3d 462.]

Court of Appeals of Ohio
Franklin County.

No. 89AP–1486.

Decided June 6, 1991.

*Abroms & Weisz* and *Michael J. Weisz,* for appellees.

*Resch & Root* and *F. David Resch,* for appellant.

---

*Per Curiam.*

Defendant-appellant, Technology Education Corporation ("TEC"), appeals from the judgment of the Franklin County Court of Common Pleas awarding plaintiffs-appellees, Gail A. Erdy, Tamara D. Wolford, and Monica Jones, $5,225 each against TEC, as well as two other defendants, for breach of contract to perform educational services.

Plaintiffs each entered into contracts with Paraprofessional Institutes of Ohio ("PIO"), in the early part of 1987. PIO operated an educational institution offering post-secondary technical and vocational training. Just before plaintiffs' classes started, PIO sold the assets of the school to Educational Leadership Corporation ("ELC"). Plaintiffs attended the classes conducted by ELC and eventually graduated and received their certification. A little less than one year after plaintiffs graduated, the school was again sold by ELC to TEC.

After graduating, but prior to the transaction between ELC and TEC, plaintiffs filed suit claiming breach of contract on the basis that defendant had misrepresented its course of study and out-placement services. Default judgment was entered against defendants PIO and ELC and the issue of defendant TEC's liability, which was the subject of its motion to dismiss, was submitted on briefs and resolved against TEC. Only TEC has appealed the trial court's ruling.

TEC raises the following assignments of error:

"I. The judgment of the court of common pleas is against the weight of the evidence because there is no evidence to support the conclusion that TEC is a successor corporation or expressly or explicitly assumed the liability in question.

"II. Defendant TEC is entitled to judgment because evidence supports the conclusion that third party defendant TEC was entitled to Judgment as matter of law."

TEC's two assignments of error raise but one issue and, therefore, they will be discussed together. The question presented is whether TEC, who was not in privity with plaintiffs, can be held liable as a matter of law solely because of its role as a successor corporation.

As a general rule, successor corporations are not liable for the debts and liabilities of the former entity. *Cattron, Inc. v. Overhead Crane & Hoist, Inc.* (1987), 32 Ohio App.3d 80, 513 N.E.2d 1390. However, four exceptions are recognized to the general rule of nonliability:

"(1) the buyer expressly or impliedly agrees to assume such liability;

"(2) the transaction amounts to a *de facto* consolidation or merger;

"(3) the buyer corporation is merely a continuation of the seller corporation; or

"(4) the transaction is entered into fraudulently for the purpose of escaping liability. * * *" *Flaugher v. Cone Automatic Machine Co.* (1987), 30 Ohio St.3d 60, 62, 30 OBR 165, 167, 507 N.E.2d 331, 334.

Liability is imposed in the general sense, regardless of how the liability arose, even though the issue usually arises in the area of products liability. *Cattron, supra; Tracey v. Winchester Repeating Arms Co.* (E.D.Pa.1990), 745 F.Supp. 1099. Therefore, the same analysis applies whether the action sounds in tort or contract.

Plaintiffs do not contend that the sale of ELC to TEC amounted to a de facto merger or that it was consummated for fraudulent purposes. Plaintiffs argue that the first and third exceptions apply in that TEC had both implicitly and expressly assumed all liabilities of ELC and that the new business was a mere continuation of the old. The trial court concluded that, because TEC had constructive knowledge of the pending litigation, it was not a bona fide purchaser and, therefore, that it impliedly assumed the liability. Furthermore, the trial court held that, since the assignment of asset agreements

stated that ELC was assigning "* * * all of its rights, title and interests * * *" to TEC "* * * in accordance with the asset purchase agreement * * *" originally entered into between PIO and ELC, TEC had expressly assumed liability. Finally, the trial court found that TEC was a mere continuation of ELC.

■ The sale of assets between ELC and TEC was evidenced by a document titled "assignment." The document tersely set forth the terms of the sale and included by reference the terms contained in the "asset purchase agreement" executed by PIO and ELC pursuant to the previous sale. Therefore, the terms of the first sale were also made terms of the second sale.

When ELC purchased the assets of PIO, the parties executed an "asset purchase agreement." Section one of the agreement provides that student agreements and contracts are assets which the buyer is acquiring. Section one also states that all assets "* * * shall be transferred free and clear of all liens and encumbrances * * *" except for those items specifically enumerated in schedule F. Schedule F is primarily confined to real and personal property liabilities and makes no mention of student contracts in any manner. The next section establishes a mechanism so that, in the event that the sale was consummated after a school term had begun, the parties could allocate tuition based on which party was actually performing the educational services.

Reading further, section eleven of the agreement, pertaining to warranties, incorporates a schedule which states that there was no pending litigation involving the school's assets or licenses to the best of the seller's knowledge. Section twelve is addressed specifically to liabilities and it provides:

*"Liabilities.* Buyer is not assuming and shall have no responsibility for any expenses accrued, liabilities incurred, or claims based on any agreements made or acts or omissions before April 1, 1987 with respect to the Assets or the Schools except for those liabilities of Sellers set forth in the attached Schedule F, and Seller and/or Guarantors shall pay, or cause to be paid, when due any such expenses, liabilities or claims."

The subsequent sale from ELC to TEC was evidenced by an assignment that specifically incorporated the terms of the asset purchase agreement and made December 8, 1988, the effective date of the agreement. As stated in the assignment:

"* * * This assignment of all of the Assets and their replacements as enumerated in the Asset Purchase Agreement referenced above shall be effective as of the 8th day of December, 1988. * * *"

Therefore, TEC purchased the assets of the school under the same terms as ELC had purchased the assets from PIO, except that a new effective date was added.

■ The trial court concluded that, since the assignment contained all right, title, and interest language but no mention of liabilities, TEC had expressly assumed all liabilities. However, the underlying asset purchase agreement, which was incorporated into the assignment, does provide for liabilities and it exempts the buyer from any liabilities arising prior to the purchase subject to specific exceptions which do not include student contracts. Therefore, TEC did not expressly assume liability for the claims asserted herein.

■ The trial court also found that TEC had implicitly assumed liability because it was, or should have been, aware of the suit which was pending at the time of the purchase. Since TEC expressly contracted to assume no liability of the type herein, there is no basis to imply that TEC assumed liability unless it can be implied as a matter of law rather than as a matter of fact. ELC also warranted that there was no pending litigation. While this may have been boilerplate language, there is nothing in the assignment that negates its terms. Finally, we have been unable to find any authority for the proposition that the buyer must be a bona fide purchaser. The parties are free to contractually allocate liabilities in any fashion they wish. Given the unambiguous language of this agreement, the liabilities associated with litigation of past student contracts were retained by the seller, ELC. Given an arm's-length transaction, which presumably the purchase by TEC constituted, the seller is simply exchanging one asset for another and remains as financially capable as before the sale.

■ Plaintiffs also argue that TEC can be held liable on a continuation theory. Most courts hold that the key element in establishing continuation is a common identity of stockholders, directors, and stock. *Tracey, supra; Leannais v. Cincinnati, Inc.* (C.A.7, 1977), 565 F.2d 437. Some courts have taken a more liberal view and have imposed liability when there exists " * * * [a] basic continuity of the enterprise * * * " after the transaction is completed. *Bonee v. L & M Constr. Chem.* (M.D.Tenn.1981), 518 F.Supp. 375. In *Flaugher,* the Supreme Court commented that the basis-of-continuity theory lies in the continuation of the corporate entity not merely the continuation of the business operation. In this case, the business operation did continue to exist, but there is no evidence indicating that TEC was not a separate and distinct business entity with new directors and stockholders. It cannot be said that TEC is a mere continuation of ELC simply because the same services were provided.

Last, most of the cited cases dealt with products liability actions where, once it was determined that a successor corporation could be held liable, strict liability attached and the matter was settled. This case sounds in contract and not products liability. Therefore, even if TEC were found to be liable as a successor corporation, there is no strict liability and plaintiffs must still prove their case. There is little evidence in the record (even if matters outside the complaint were properly considered) addressed to the merits of plaintiffs' case other than their allegations. The matter was determined on a motion to dismiss. The decision states nothing about the basis for plaintiffs' claim but, rather, determines that liability can be imposed on TEC and then summarily imposes it. Even if liability could be imposed on TEC, plaintiffs have failed to sustain their burden of proof. Therefore, at most, the trial court should have merely overruled TEC's motion to dismiss.

Defendant's assignments of error are sustained, and the judgment of the trial court is reversed. This case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and case remanded.*

McCORMAC, REILLY and SHAW, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, sitting and hearing the action pursuant to active duty prior to his retirement, and assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution, subsequent to his retirement.

HENRY E. SHAW, JR., J., of the Delaware County Common Pleas Court, sitting by assignment.