RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0297p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOHN R. MICKOWSKI,

        *Plaintiff-Appellant,*

    *v.*

    No. 04-3889

VISI-TRAK WORLDWIDE, LLC,

        *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00206—William H. Baughman, Jr., Magistrate Judge.

Argued: June 9, 2005

Decided and Filed: July 13, 2005

Before: CLAY and SUTTON, Circuit Judges; REEVES, District Judge.[*]

---

## COUNSEL

**ARGUED:** Jeffrey A. Crossman, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Cleveland, Ohio, for Appellant. Jonathon M. Yarger, CHERNETT, WASSERMAN, YARGER & PASTERNAK, Cleveland, Ohio, Wallace W. Walker, Jr., WALLACE, WALKER & COMPANY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jeffrey A. Crossman, Mark A. Phillips, BENESCH, FRIEDLANDER, COPLAN & ARONOFF, Cleveland, Ohio, for Appellant. Jonathon M. Yarger, CHERNETT, WASSERMAN, YARGER & PASTERNAK, Cleveland, Ohio, Wallace W. Walker, Jr., WALLACE, WALKER & COMPANY, Cleveland, Ohio, for Appellee.

---

## OPINION

---

    CLAY, Circuit Judge. Plaintiff John R. Mickowski obtained a multi-million dollar patent infringement judgment against Visi-Trak Corporation ("VTC"), which subsequently declared bankruptcy and sought reorganization under Chapter 11 of the Bankruptcy Code. After the bankruptcy court confirmed a reorganization plan for VTC, thereby discharging VTC's liability for the unpaid patent judgment, Defendant Visi-Trak Worldwide, LLC purchased substantially all of VTC's remaining assets. Subsequent to the sale, the operating trustee for VTC successfully moved the bankruptcy court to revoke the reorganization plan. Assuming that the bankruptcy court's

---

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

revocation of the reorganization plan also revoked the confirmation order, Mickowski filed suit in the Northern District of Ohio, seeking to hold Visi-Trak Worldwide liable for the unpaid patent judgment against VTC. Mickowski now appeals the June 7, 2004 order of the district court, denying his motion for summary judgment and granting summary judgment for Visi-Trak Worldwide on the grounds that Visi-Trak Worldwide purchased VTC's assets free and clear of any claim for the unpaid patent judgment and, in any event, Visi-Trak cannot be held liable as VTC's successor under Ohio law. For the reasons that follow, we **AFFIRM** the judgment of the district court.

# I
# BACKGROUND

VTC is an Ohio corporation that was formed on December 5, 1988. In 1994, John Mickowski, a resident of New York, filed an action in the Southern District of New York against VTC for direct, contributory and induced patent infringement on patents he owned. In 1999, Mickowski filed suit in the Northern District of Ohio against three of VTC's officers, John R. Vann, John T. Branden, and Ying Shen. On March 5, 1999, the court in the Southern District of New York entered judgment in favor of Mickowski against VTC in the amount of $5,998,637 for trebled damages and prejudgment interest on Mickowski's claim that VTC willfully induced infringement of the patents in the suit. On June 5, 1999, before Mickowski could execute the patent judgment against VTC, VTC voluntarily petitioned for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of Ohio. On March 14, 2000, VTC filed a proposed plan of reorganization, which proposed the sale of VTC's stock for $500,000.

Mickowski, a creditor of VTC by virtue of the patent judgment, and Visi-Trak Acquisition Group ("VTAC"), filed a competing plan of reorganization on June 30, 2000, pursuant to which VTAC proposed purchasing VTC's stock for $1,027,000. In response, VTC filed an amended plan of reorganization, offering to pay $1.1 million for the stock of a reorganized VTC. On September 1, 2000, VTAC and Mickowski submitted an amended plan, increasing its bid to $2,000,000. They submitted a revised amended plan of reorganization on October 2, 2000.

The bankruptcy court issued an order permitting VTAC to conduct due diligence at VTC's headquarters on November 10, 2000. Upon the arrival of VTAC personnel at VTC's site, VTC's management group (consisting of Jack Vann, Tom Vann, Ying Shen, and Jack Branden) resigned. On November 19, 2000, Mary Ann Rabin was appointed Chapter 11 Operating Trustee for VTC. Believing that VTC's management group had damaged the ongoing business by resigning, the operating trustee of VTC and Mickowski filed suit against the management group for breach of fiduciary duty. That matter settled in March 2001.

After months of difficult negotiations and discussions, VTC confessed that it was unwilling or unable to litigate to determine which of the two plans would survive the confirmation process. At the behest of trade creditors, the parties met to determine whether it was more appropriate to sell VTC's assets pursuant to 11 U.S.C. § 363 (providing that the bankruptcy trustee may use, sell, or lease property of the estate). At that meeting, VTAC offered $2.2 million for the assets, and expressed its desire to present that deal through a plan of reorganization. Discussions regarding the § 363 asset sale ceased, and the creditors elected to support the VTAC plan.

Mickowski and VTAC presented a second amended plan of reorganization on January 9, 2001. The plan stated that its effective date would be February 28, 2001, provided that: (1) the bankruptcy court would have confirmed the plan at least 11 days prior to that date; (2) no stay of the confirmation order would be in effect; (3) the confirmation order would not have been vacated; (4) and all "conditions to the Effective Date, as set forth … in Section IX.A. of the Plan, [would] have been satisfied or waived." Article IX sets forth numerous conditions to the effective date of the plan, including the bankruptcy court entering the confirmation order, approving the plan; there having

been no material adverse change after September 30, 2000 in the financial condition of VTC which would make it improbable that VTC "could continue operations at historical sales, gross margin and operating income levels or meet its financial obligations" on a going forward basis; and VTAC having had the opportunity to audit VTC's financial records. The plan further provided that if each condition to the effective date were not timely satisfied or waived, then the proponents of the plan (VTAC or Mickowski) could move the bankruptcy court to vacate the confirmation order, whereupon the plan would be deemed null and void in all respects, including with respect to the release, disallowance, or extinguishment of any claims by or against VTC.

On January 25, 2001, after holding a confirmation hearing, the bankruptcy court held that the conditions to the effective date contained in Article IX of the plan were appropriate in light of the uncertainties of VTC's financial condition. The court ordered that, "[e]xcept as expressly otherwise provided in [its] Order or the Plan, on the Effective Date all property and assets of the Debtor's [VTC's] estate shall vest, free and clear of all Claims, interests and encumbrances, in the Reorganized Debtor, subject only to the provisions of the Plan." The court further ordered that, except as provided in the plan, entry of the court's order discharged VTC from any debt that arose before the date of the confirmation order. The bankruptcy court entered the confirmation order on February 9, 2001.

On April 3, 2001, VTC's operating trustee filed an emergency motion pursuant to 11 U.S.C. § 363, seeking the bankruptcy court's approval for the private sale of certain assets of VTC free and clear of liens. The trustee's motion sought approval to sell certain of VTC's assets through a private sale to VTC Holdings, LLC, a company organized by Kathy Vann in September 2000 for the purpose of filing a plan of reorganization for VTC; VTC Holdings subsequently changed its name to Visi-Trak Worldwide. The trustee argued that VTAC was refusing to purchase VTC's assets on the ground that there had been a material adverse change in VTC's business since the plan was confirmed. The trustee stated that she ceased VTC's operations on March 30, 2001 because it had become too costly to operate and was undertaking to sell VTC's assets as quickly as possible.

Mickowski filed two objections to the trustee's emergency motion. Mickowski argued that the purported emergency that prompted the trustee's desire for a sale was the product of collusion amongst certain employees of VTC to discourage customers from placing sales orders. Mickowski also argued that the trustee had failed to submit an appraisal to establish the fair and reasonable value of the assets being sold.

The court rejected the proposed private sale of VTC's assets and ordered the trustee to hold a public auction, where the assets were to be sold "as is" and "where is." An auction was held on May 18, 2001, and VTC Holdings (a/k/a Visi-Trak Worldwide) was the winning bidder of VTC's accounts receivable, inventory, and equipment. The bankruptcy court confirmed the sale of assets to VTC Holdings on May 18, 2001. On September 5, 2001, VTC's bankruptcy proceedings were converted to liquidation proceedings pursuant to Chapter 7 of the Bankruptcy Code.

When Visi-Trak Worldwide commenced business, each of its officers and key employees were former employees of VTC, and each was hired to perform the same tasks that they previously had performed at VTC. Visi-Trak Worldwide's website also indicated that it was the same company as VTC, just at a new location.

On June 20, 2001, VTC's operating trustee moved to vacate the bankruptcy court's order confirming the second amended plan of reorganization. The trustee argued that the conditions for confirmation of the plan had not been fulfilled and that the plan could not be consummated. Based on the trustee's representation that all necessary parties had been served with the motion, the bankruptcy court ordered on August 2, 2001 that "[t]he Second Amended Chapter 11 Plan of John

R. Mickowski and VT Acquisition Corp. is hereby vacated." Visi-Trak Worldwide was never served with the motion to vacate nor with notice of the court's order granting the motion.

On February 1, 2002, Mickowski filed a complaint in the United States District Court for the Northern District of Ohio. Mickowski's complaint sought a declaratory judgment that Visi-Trak Worldwide is liable for Mickowski's patent judgment against VTC on the ground that Visi-Trak Worldwide is the successor to and a mere continuation of VTC. Mickowski also alleged that the formation of Visi-Trak Worldwide, the abandonment of VTC by its officers and directors, and Visi-Trak Worldwide's subsequent purchase of VTC's assets amounted to a fraud upon Mickowski.

On June 7, 2004, the court denied Mickowski's motion for summary judgment and granted summary judgment for Visi-Trak Worldwide. The court concluded that at the time Visi-Trak Worldwide purchased VTC's assets in bankruptcy, it was not subject to a claim of successor liability because the bankruptcy court had discharged VTC's liability on the patent infringement judgment by its order confirming the second amended plan of reorganization. Although the bankruptcy court subsequently vacated its order confirming that plan of reorganization, the court held, as a matter of public policy, that successor liability should not attach retroactively. The court found in the alternative that state law applies to Mickowski's successor liability claim and that Mickowski's claim fails as a matter of Ohio law. Mickowski timely appealed.

## II
## VISI-TRAK WORLDWIDE'S ABILITY TO RELY
## ON VTC'S DISCHARGE IN BANKRUPTCY

### A.     Standard of Review

A district court's allowance of an affirmative defense that purportedly was not raised in a timely manner is reviewed for abuse of discretion. *Williams v. Lampe*, 399 F.3d 867, 871 (7th Cir. 2005).

### B.     Analysis

The Federal Rules of Civil Procedure require a party to plead the affirmative defense of "discharge in bankruptcy." FED. R. CIV. P. 8(c). The purpose of Rule 8(c) is to give the opposing party notice of the defense and a chance to argue, if he or she can, why the defense lacks merit. *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350 (1971). Mickowski argues that Visi-Trak Worldwide failed to comply with Rule 8(c) in pleading an affirmative defense to Mickowski's claim for declaratory relief, successor liability, and fraud. Specifically, he argues that Visi-Trak Worldwide failed to plead the affirmative defense that Mickowski's claims relating to the patent judgment against VTC were discharged in bankruptcy.

We disagree. Visi-Trak Worldwide's answer clearly put Mickowski on notice that it would be relying on the bankruptcy rulings to foreclose Mickowsi's claims. Visi-Trak Worldwide's answer states:

> Mickowski's claims are preempted by and/or Mickowski is precluded from pursuing his claim by, the Bankruptcy Code and the law regarding bankruptcy generally and bankruptcy sales specifically, including, without limitation by reason of specification, the Proceedings in *In re Visi-Trak Corporation*, U.S. Bankruptcy Court, Northern District of Ohio Case No. 99-14624-rb, including without limitation (a) the proceedings in the Bankruptcy Court pertaining to the Emergency Motion by Operating Trustee Mary Ann Rabin Pursuant to Section 363 of the Bankruptcy Code to Sell Certain Assets Free and Clear of Liens and Approving Certain Buyer's Protections Including a Break-Up Fee, filed April 3, 2001; (b) the effect of the

purchase by VTW, then known as VTC Holdings, LLC, of virtually all of VTC's assets at public auction conducted pursuant to 11 U.S.C. 363; and (c) the effect of the Bankruptcy Court orders (i) ordering and (ii) approving and confirming such sale, dated April 23, 2001, and May 18, 2001, respectively.

Although the affirmative defense does not specifically invoke the phrase "discharge in bankruptcy" contained in Rule 8(c), it clearly notified Mickowski that Visi-Trak Worldwide would be defending against any attempt by Mickowski to enforce the patent judgment by relying on the prior bankruptcy proceedings and related orders, including the confirmation order discharging any claim for the patent judgment. Accordingly, Mickowski's argument that Visi-Trak Worldwide waived its affirmative defense and that he was somehow prejudiced lacks merit. The district court did not abuse its discretion in permitting Visi-Trak Worldwide to raise this defense.

## III
## SUMMARY JUDGMENT FOR VISI-TRAK WORLDWIDE BASED ON VTC'S DISCHARGE IN BANKRUPTCY

### A.      Standard of Review

This Court reviews *de novo* a district court's decision to grant summary judgment. *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001). Summary judgment must be granted if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute over a material fact is only a "genuine issue" if a reasonable jury could find for the nonmoving party on that issue. *Cockrel*, 270 F.3d at 1048 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In reviewing the district court's grant of summary judgment, this Court must view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### B.      Analysis

Mickowski argues that the bankruptcy court's February 9, 2001 order, which confirmed VTC's plan of reorganization and discharged VTC from any debt that arose before that date, was completely vacated by the bankruptcy court on August 2, 2001 and therefore no longer has any legal effect. Mickowski further argues that there is no evidence that Visi-Trak Worldwide relied on the February 9, 2001 order when it purchased most of VTC's remaining assets at the May 18, 2001 public auction. Mickowski argues that Visi-Trak Worldwide knew, at the time of the auction, that the reorganization plan upon which the February 9, 2001 confirmation order was based was not going to become effective; if the plan was going to become effective, then the public auction of VTC's assets would have been unnecessary. According to Mickowski, Visi-Trak Worldwide purchased VTC's assets free and clear of secured liens only and, therefore, his unsecured claim based on the unpaid patent judgment survived the asset sale. *See* 11 U.S.C. § 363(f); *In re White Mot. Credit Corp.*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

Critical to Mickowski's argument is the assertion that the confirmation order is no longer in force or effect. The revocation of any confirmation order is governed by 11 U.S.C. § 1144, which provides:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall –

> (1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and
> (2) revoke the discharge of the debtor.

Visi-Trak argues that the bankruptcy court's August 2, 2001 order, by its own terms, did not revoke the confirmation order and, in any event, did not comport with the procedural requirements of 11 U.S.C. § 1144. We agree for the reasons stated below.

First, although the August 2, 2001 order is captioned "ORDER TO VACATE ORDER CONFIRMING PLAN OF REORGANIZATION," the operative language of the order vacates only the second amended plan of reorganization, not the confirmation order. *See* J.A. 923 ("The Second Amended Chapter 11 Plan of John R. Mickowski and VT Acquisition Corp. is hereby vacated.").

Second, proving the point that the order vacated only the reorganization plan and not the confirmation order, the bankruptcy court did not comply in this case with any of the formalities necessary to revoke a bankruptcy discharge or confirmation order. First, the bankruptcy court failed to comply with the Federal Rules of Bankruptcy Procedure. Rules 7001(4) and (5) provide that a proceeding to revoke a bankruptcy discharge or to revoke a confirmation order is an "adversary proceeding." An adversary proceeding in bankruptcy is commenced like any other new civil action – by filing a complaint with the bankruptcy court and serving process on the named parties. FED. R. BANKR. P. 7003 (adopting FED. R. CIV. P. 3); FED. R. BANKR. P. 7004. Here, however, the August 2, 2001 order was not the product of an adversary proceeding. Rather, the operating trustee for VTC merely filed a motion after the May 18, 2001 asset sale to Visi-Trak Worldwide.

Third, Rule 4006 provides that if an order is entered denying or revoking a discharge, the clerk must promptly give notice to all creditors. FED. R. BANKR. P. 4006; *see also* FED. R. BANKR. P. 2002(f)(6). The trustee's motion to vacate the confirmation order, however, was not served on all creditors, nor on Visi-Trak Worldwide.

Fourth, 11 U.S.C. § 1144 permitted the bankruptcy court to vacate the confirmation order only upon a finding that the order was procured by fraud. The August 2, 2001 order does not refer to fraud at all.

Finally, although the reorganization plan explicitly provides that if each condition to the effective date were not timely satisfied or waived, then "the Proponents" of the plan – i.e., VTAC or Mickowski – could move the bankruptcy court to vacate the confirmation order, it was not VTAC or Mickowski who made the motion but rather VTC's operating trustee.

Because the bankruptcy court did not follow any of the Bankruptcy Code's procedures required when a litigant seeks to vacate a confirmation order, the order remains in effect at least as to Visi-Trak Worldwide. The fact that the reorganization plan was never consummated does not undermine the continuing viability of the confirmation order as to Visi-Trak Worldwide's purchase of VTC's assets. The result is that, assuming that Visi-Trak Worldwide is VTC's successor, Visi-Trak Worldwide may invoke the complete discharge of Mickowski's patent judgment claim that was in effect at the time it purchased VTC's assets. Summary judgment was proper for Visi-Trak Worldwide on this ground alone.

IV
POTENTIAL SUCCESSOR LIABILITY OF VISI-TRAK WORLDWIDE

A.      **Standard of Review**

This Court reviews *de novo* a district court's decision to grant summary judgment. *Cockrel*, *supra*.

B.      **Analysis**

Even assuming, *arguendo*, that Mickowski's patent judgment against VTC was revived on August 2, 2001, when the bankruptcy court purportedly vacated the confirmation order, we hold in the alternative that Visi-Trak Worldwide cannot be held liable for that judgment as a successor to VTC. Mickowski argues that, under federal common law, he needs to show only that Visi-Trak Worldwide had notice of Mickowski's claim against its predecessor (VTC) and that there was "substantial continuity" in the operation of the business before and after the sale. *See, e.g.*, *EEOC. v. G-K-G, Inc.*, 39 F.3d 740, 748 (7th Cir. 1994) (citations omitted) (age discrimination case; finding substantial continuity where successor retained most of predecessor's personnel, including most of its management personnel and all its salesmen, and did not institute major changes until a year after the acquisition); *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1329 (7th Cir. 1990) (suit for delinquent pension funds; holding that continuity of operations was established where successor employed substantially all of the predecessor's workforce, including supervisory personnel; used the predecessor's plant, machinery, and equipment and manufactured the same products; the successor completed the predecessor's uncompleted work orders and agreed to honor warranty claims for goods sold by the predecessor; and several of the predecessor's officers stayed on in the same positions under the successor's management).

Visi-Trak Worldwide counters that the "substantial continuity" test is not part of the federal common law and that, in any event, the "mere continuation" test for successor liability under Ohio common law governs. *See Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1130-31 (Ohio 1993) ("A corporation that purchases the assets of another is not liable for the contractual liabilities of its predecessor corporation unless (1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a de facto consolidation or merger; (3) *the buyer corporation is merely a continuation of the seller corporation*; or (4) the transaction is entered into fraudulently for the purpose of escaping liability.") (emphasis added; citation omitted). Under Ohio common law, a corporation is not a mere continuation of the corporation whose assets it has purchased, just because it continues to provide the same services. *Erdy v. Columbus Paraprofessional Inst.*, 599 N.E.2d 338, 341 (Ohio Ct. App. 1991). Under a "mere continuation" theory of successor liability, it is not enough to show that the purported successor has "the same physical plant, officers, employees and product line as" the purported predecessor. *Welco*, 617 N.E.2d at 1134 (holding that these facts are relevant only to the more expansive theory of successor liability of substantial continuity, which does not apply where one corporation has contracted to purchase the assets of another). Rather, "the basis of this [mere continuation] theory is the continuation of the corporate entity, not the business operation, after the transaction," such as when one corporation sells its assets to another corporation with the same people owning both corporations. *Welco*, 617 N.E.2d at 1134 (citation omitted); *see also id.* at 1133 (rejecting a relaxation of the "mere continuation" theory of successor liability in which courts have imposed liability after a cash-for-assets transaction "on the basis of significant shared features between the predecessor and successor corporations"). "[T]he key element in establishing continuation is a common identity of stockholders, directors, and stock." *Erdy*, 599 N.E.2d at 341 (citations omitted).

Because Ohio law of successor liability arguably is more favorable to Visi-Trak Worldwide than the relaxed standard under federal common law, the application of federal or state common law

could determine whether the district court appropriately granted summary judgment for Visi-Trak Worldwide. For the reasons discussed below, we hold that the district court properly held that Ohio law applies the relevant standard of successor liability and that the court correctly held that Visi-Trak Worldwide is not VTC's successor as a matter of Ohio law.

Article I, Section 8 of the U.S. Constitution prescribes that Congress shall act "to promote the program of science and useful arts, by securing for limited times for authors and inventors the exclusive right to their respective writings and discoveries." U.S. CONST. Art. I, § 8. The objective of the clause "was clearly to facilitate the granting of rights national in scope." *Goldstein v. California*, 412 U.S. 546, 555 (1973). From this general statement in *Goldstein*, Mickowski argues that federal common law must guide this Court's determination of Visi-Trak Worldwide's potential successor liability for his patent judgment. Yet, Mickowski neglects to mention that the Court in *Goldstein* also held that "the subject matter to which [Article I, § 8] is addressed may … be of purely local importance and not worthy of national attention or protection," *id.* at 558, that its subject matter "may at times be of purely local concern," and that "[n]o conflict will necessarily arise from a lack of uniform state regulation," *id.* at 560. Thus, *Goldstein* suggests that there need not be complete, national uniformity in the protection of patent rights.

Mickowski also cites cases in which courts have applied federal common law to the issue of successor liability. *See Bhd. of Locomotive Eng'rs v. Springfield Terminal R. Co.*, 210 F.3d 18, 26 (1st Cir. 2000) (Railway Labor Act case); *Chicago Truck Drivers Union v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995) (ERISA case); *G-K-G*, 39 F.3d at 747-48 (ADEA case); *Leib v. Georgia Pac. Corp.*, 925 F.2d 240, 246 (8th Cir. 1991) (adopting federal common law approach for determining successorship liability for a claim under the Vietnam Era Veterans' Readjustment Assistance Act that is similar to the approach used under the National Labor Relations Act). Because these cases arose in the context of labor law and pension litigation, they do not necessarily extend to the patent judgment enforcement context.

To determine whether the standards for successor liability for a patent judgment derive from federal or state common law, this Court must apply the Supreme Court's decision in *Atherton v. Fed. Deposit Ins. Corp.*, 519 U.S. 213 (1997). In *Atherton*, the Resolution Trust Corporation (later replaced by the FDIC) sued several officers and directors of a savings association for violating the standard of care they owed the federally-chartered and federally-insured savings associations. The initial question for the Court was whether that standard of care was defined by federal common law. The Court explained that "federal common law" refers to "a rule of decision that amounts, not simply to an interpretation of a federal statute or a properly promulgated administrative rule, but, rather, to the judicial 'creation' of a special federal rule of decision." *Id.* at 218 (citations omitted). Critically, the Court noted that "'cases in which judicial creation of a special federal rule would be justified ... are ...'few and restricted.'" *Id.* (quoting *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994)) (internal quotation marks and citation omitted). Further, the existence of related federal statutes does not automatically show that Congress intended courts to create federal common-law rules, "for 'Congress acts… against the background of the total *corpus juris* of the states….'" *Id.* (quoting *Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68 (1966) (other quotation marks and citation omitted)). "Thus, normally, when courts decide to fashion rules of federal common law, 'the guiding principle is that a significant conflict between some federal policy or interest and the use of state law ... must first be specifically shown." *Id.* (quoting *Wallis*, 384 U.S. at 68). "Indeed, such a 'conflict' is normally a 'precondition.'" *Id.* (quoting *O'Melveny*, 512 U.S. at 87).

With respect to the facts before it, the Court noted that Congress had passed numerous pieces of legislation concerning the formation, operation, and activities of federally-chartered banks, which are distinct from savings associations. *Id.* at 219. Congress also had enacted legislation concerning federally-chartered savings associations. *Id.* None of this legislation, however, even purported to set forth standards for corporate governance of savings associations. *Id.* Thus, the remaining

question for the Court was whether "the application of state-law standards of care to such banks would conflict with, and thereby significantly threaten, a federal policy or interest." *Id.* If so, then it would be appropriate to create federal common law on the issue (assuming that no federal statute controlled the issue).

The Court found that there was no such conflict between state law standards and a federal policy or interest. *Id.* The Court rejected the FDIC's argument about the need for uniformity, which purportedly would occur if federal common law supplanted state standards of fiduciary responsibility. *Id.* at 219-20. "To invoke the concept of uniformity… is not to prove its need," remarked the Court. *Id.* at 220 (internal punctuation and citations omitted). In fact, there was no need for uniformity because the nation's banking system had thrived despite disparities in matters of corporate governance. *Id.* The Court also held that the mere fact that savings associations in the case were federally-chartered did not in itself justify the application of federal common law. *Id.* at 221. The Court observed that numerous state laws (*e.g.*, contract law, employment discrimination laws) apply to federally-chartered banks. *Id.* at 222-23. In the end, the Court found no significant conflict with, or threat to, a federal interest. *Id.* at 225. The Court therefore held that the case before it did not represent one of the few and restricted instances in which a federal court can create federal common law. *Id.*[1]

Attempting to distinguish *Atherton*, Mickowski argues that federal common law applies to a determination of successor liability because there is a conflict between state and federal law standards; and that the federal law standard is more encompassing than its Ohio common law counterpart. But the mere fact that the "substantial continuity" test of federal common law is more encompassing than the "mere continuation" test of state common law does not demonstrate a "significant conflict between some federal policy or interest and the use of state law." *Atherton*, 519 U.S. at 218 (internal quotation marks and citation omitted). Mickowski has failed to show that there is a federal policy or interest in extending the substantial continuity test to the patent judgment enforcement context; to date, that test has largely been limited to the "few and restricted" areas of labor and employment law and pension benefits, where the need for a uniform, broader rule of successor liability is more apparent. *See Bhd. of Locomotive Eng'rs*, 210 F.3d at 26 ("National uniformity is essential in the interpretation of labor law.… If courts were to rely on state law to determine when veil piercing was appropriate, RLA collective bargaining agreements might include some companies in one state and other companies in a neighboring state."); *Moriarty v. Svec*, 164 F.3d 323, 329 (7th Cir. 1998) ("The federalization of multiemployer plan contribution obligations evinces a strong congressional desire to minimize contribution losses and the resulting burden such losses impose on other plan participants. We emphasize[] that the state law of successor liability, which cuts off the obligation to pay a predecessor's promised contributions, significantly conflicts with this federal interest and justifies a departure[.]") (internal quotation marks and citation omitted); *G-K-G, Inc.*, 39 F.3d at 748 (observing that federal common law doctrine of successor liability has been applied in the labor and employment context because "[u]sually the primary relief sought in such cases is nonmonetary and can be effective only if directed against the workers' current employer").[2]

An asserted need for absolute uniformity in the collection of patent judgments, without more, is insufficient in itself to justify resort to federal common law. Mickowski has failed to demonstrate

---

[1] The Court went on to hold that a federal statute that authorizes a civil action against bank officers for gross negligence did not supplant state laws that impose stricter fiduciary obligations on bank officers. *Id.* at 227.

[2] Notably, even in the realm of labor law, this Circuit has rejected the "substantial continuity" test, requiring the alleged successor to be the "alter ego" of the predecessor corporation or to have voluntarily assumed the obligations under the collective bargaining agreement. *Southward v. S. Cent. Ready Mix Supply Corp.*, 7 F.3d 487, 493 (6th Cir. 1993).

that the failure to adopt a uniform federal standard for successor liability will somehow inhibit patent rights generally.[3] Nor has Mickowski presented evidence that patent rights have failed to thrive despite the existence of more restrictive and/or varying state law standards for successor liability. There certainly is no reason to think that the state of Ohio will become a haven for companies seeking to avoid their obligations to pay patent judgments or, for that matter, any other type of unpaid judgment. *Cf. Atchison, Topeka and Santa Fe Ry. Co. v. Brown & Bryant, Inc.*, 159 F.3d 358, 364 (9th Cir. 1997) (opining, without deciding, that federal common law standard for successor liability does not apply under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA): "There is no evidence that the application of state corporation law will frustrate this objective. No state provides a haven for liable companies. Nor is there reason to think that states will alter their existing successor liability rules in a 'race to the bottom' to attract corporate business.… It is unrealistic to think that a state would alter general corporate law principles to become a peculiarly hospitable haven for polluters.") (citing *Anspec Co. v. Johnson Controls, Inc.*, 922 F.2d 1240, 1250 (6th Cir. 1991) (Kennedy, J., concurring)). Particularly in light of *Goldstein*'s pronouncement that there need not be complete, national uniformity in the protection of patent rights, Mickowski has failed to make his case for resort to or the creation of federal common law regarding successor liability.[4]

The Supreme Court's decision in *United States v. Bestfoods*, 524 U.S. 51 (1998) also militates against the application of the substantial continuity test from federal common law. *Bestfoods* involved a CERCLA action against the parent corporations of chemical manufacturers for the costs of cleaning up industrial waste generated by a chemical plant. The Court explored the question of whether a parent corporation that actively participated in, and exercised control over, the operations of a subsidiary may, without more, be held liable as an operator of a polluting facility owned or operated by the subsidiary. *Bestfoods*, 524 U.S. at 55. The Court initially observed that, under general corporate law principles, a parent corporation does not have liability beyond the assets of the subsidiary. *Id.* at 61-62. The Court further observed that, under corporate law principles, a parent company's corporate veil may be pierced and the shareholder held liable for the subsidiary corporation's conduct when, *inter alia,* the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf. *Id.* at 62 (citations omitted). The Court then stated:

---

[3]Mickowski's citation to *Clearfield Trust Co. v. United States*, 318 U.S. 363 (1942), is misplaced because that case involved the federal government's constitutional power regarding the regulation of commercial paper, where the need for a uniform federal standard is obvious *See id.* at 367 ("The rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law. When the United States disburses its funds or pays its debts, it is exercising a constitutional function or power.… The authority to issue the check had its origin in the Constitution and the statutes of the United States and was in no way dependent on the laws of Pennsylvania or of any other state."). This case does not involve the rights of the United States arising under a nationwide federal program, but a private citizen's right to enforce a money judgment that happens to arise out of a federally-created property right in a patent.

[4]A federal district court in Illinois reached a similar conclusion, holding:

> Here, Congress has enacted federal statutes governing patents, and there is no question patents are of paramount Constitutional importance. *See* U.S. CONST. art. I, § 8, cl. 8. However, the federal patent statutes do not set forth corporate standards regarding successor liability. *Cf. Atherton,* 519 U.S. at 219. Arachnid invokes the need for uniformity as justification for creating federal common law.… It has failed to justify such a need; corporations and other business organizations routinely deal with disparities in corporate governance. *See Atherton,* 519 U.S. at 220. In short, the court finds no significant conflict with, or threat to, a federal interest, and this is not one of those few and restricted instances in which federal common law should be created. *Cf. id.* at 225.

*Arachnid, Inc. v. Valley Recreation Prods., Inc.*, No. 98 C 50282, 2001 WL 1664052, *12 (N.D. Ill. Dec. 27, 2001).

> CERCLA is thus like many another congressional enactment in giving no indication that "the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute," *Burks v. Lasker,* 441 U.S. 471, 478, 99 S. Ct. 1831, 1837, 60 L. Ed.2d 404 (1979), and the failure of the statute to speak to a matter as fundamental as the liability implications of corporate ownership demands application of the rule that "[i]n order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law," *United States v. Texas,* 507 U.S. 529, 534, 113 S. Ct. 1631, 1634, 123 L. Ed.2d 245 (1993) (internal quotation marks omitted).

*Id.* at 63. The Court therefore held that evidence that a parent corporation actively participated in, and exercised control over, the operations of a subsidiary was not sufficient to hold the parent liable as an operator of a polluting facility. *Id.* at 55. The Court rejected the proposition that CERCLA establishes a relaxed rule of derivative liability which "displace[s] or fundamentally alter[s] common-law standards of limited liability." *Id.* at 70.

Following *Bestfoods*, the Second Circuit in *New York v. Nat'l Servs. Indus., Inc.*, 352 F.3d 682 (2d Cir. 2003), rejected the argument that federal common law provides the standards for successor liability in a CERCLA action. Instead of the federal common law standard of "substantial continuity," the court applied the state common law rule of "mere continuation," reasoning as follows:

> In considering the substantial continuity test, we take from *Bestfoods* the principle that when determining whether liability under CERCLA passes from one corporation to another, we must apply common law rules and not create CERCLA-specific rules.… [T]here is some prior precedent for the substantial continuity rule and the rule is generally presented as a variant of the mere continuation exception. However, the substantial continuity test is not a sufficiently well established part of the common law of corporate liability to satisfy *Bestfoods*' dictate that common law must govern.…Within federal law, the substantial continuity doctrine is well established in the area of labor law. *See, e.g., Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 43-45, 107 S. Ct. 2225, 96 L. Ed.2d 22 (1987). However, the labor law cases are particular to the labor law context and therefore have not been and cannot easily be extended to other areas of federal common law.… Perhaps if the substantial continuity doctrine were widely adopted among the states, it might be considered absorbed into federal common law and thus applied under CERCLA pursuant to the reasoning in *Bestfoods* in whatever states had not adopted it. However, at present the doctrine has been adopted by only a handful of states.… We thus find that the substantial continuity doctrine is not a part of general federal common law and, following *Bestfoods,* should not be used to determine whether a corporation takes on CERCLA liability as the result of an asset purchase.

*Id.* at 685-87; *see also United States v. Davis*, 261 F.3d 1, 54 (1st Cir. 2001) (rejecting argument that federal "substantial continuity" test should apply to successor liability determination under CERCLA; rather, state common law applies). This Circuit similarly has declined to create federal common law and held that state common law provides the relevant standards for successor liability in a CERCLA action. *See City Mgmt. Corp. v. U.S. Chem. Co., Inc.*, 43 F.3d 244, 250 (6th Cir. 1994) (citing *Anspec*, 922 F.2d at 1247-48).

We agree with Visi-Trak Worldwide that *Bestfoods* and *Nations Servs. Indus.* are persuasive authority for the proposition that the substantial continuity test of federal common law likewise does not apply in the context of patent judgment enforcement. Because federal patent laws do not speak to the issue of successor liability, there is little basis to abrogate the general rule derived from state

common law that substantial continuity is insufficient to impose liability. The substantial continuity test has gained widespread acceptance only in the narrow areas of labor law, employment discrimination law, and pension benefit litigation. Accordingly, state law is the appropriate reference for successor liability standards, in particular, Ohio's "mere continuation" doctrine.

As discussed above, under Ohio law, a corporation is not a mere continuation of the corporation whose assets it has purchased, even though it continues to provide the same services and has the same physical plant, officers, employees, and product line as the purported predecessor. *Erdy*, 599 N.E.2d at 341; *Welco*, 617 N.E.2d at 1134. Rather, the key element is identity of ownership: a common identity of stockholders, directors, and stock. Mickowski cannot make this showing. VTC's stock was owned by thirteen different shareholders at the time that the bankruptcy proceedings commenced. By contrast, Visi-Trak Worldwide's stocks is owned by two trusts: the Agape Virgineus trust, which owns 95%, and Agape TK trust, which owns 5%.

Mickowski nevertheless argues that there is common ownership between Visi-Trak Worldwide and VTC because Kathleen Vann, who is the trustee of the Agape Virgineus trust is married to John Vann, her husband and former owner of over 53% of VTC's stock. We disagree. Although there is no published Ohio decision on this point, an unpublished decision of the Ohio Court of Appeals held that a husband and wife are not the same individuals for purposes of determining identity of ownership. *Semirale v. Rhea*, No. 65906, 1994 WL 197219, \*3 (Ohio Ct. App. May 19, 1994) (*per curiam*; unpublished). Mickowski has presented no Ohio authority to the contrary. Instead, he has submitted cases from Illinois, which purportedly hold that husband and wives can be considered the same owners for purposes of successor liability. Even assuming that resort to Illinois law would be appropriate, all of the cited cases are distinguishable.

In *Park v. Townson & Alexander, Inc.*, 679 N.E.2d 107, 109-10 (Ill. Ct. App. 1997), a husband and wife each owned 50% of the predecessor company's stock, the wife asserted that she owned 100% of the successor's stock, and the husband controlled the successor company. Inconsistently, a corporate tax return for the successor corporation indicated that the husband and wife each were 50% owners of the successor company. *Id.* at 110. By contrast, in the instant case, Kathleen Vann did not own any VTC stock, and there is no evidence suggesting that John Vann owns stock in Visi-Trak Worldwide.

In *Steel Co. v. Morgan Marshall Indus., Inc.*, 662 N.E.2d 595, 600 (Ill. Ct. App. 1996), a wife obtained 80% of the stock in the successor corporation by way of a gratuitous transfer from her husband, who had been the sole shareholder of the predecessor corporation and who became the chief executive officer of the successor. Here, by contrast, there is no evidence that Kathleen Vann obtained 95% of the shares of Visi-Trak Worldwide by way of a gratuitous transfer from her husband. Those shares were purchased by the Agape Virgineus Trust, and Mickowski has not submitted any evidence showing that the trust was funded at all by John Vann's assets or by jointly-owned assets.

In *Lincoln Nat'l Life Ins. Co. v. Nicklau, Inc.*, No. 98-C-2453, 2000 WL 656683, \*1 (N.D. Ill. May 17, 2000) (unpublished), two relatives (Dan and Tuan Nguyen) were the sole shareholders of the predecessor corporation, and Kim Nguyen, the wife of Dan, was the sole shareholder of the successor. In finding common ownership, the court relied on the fact that there was a "substantial continuity" between the two businesses. *Id.* at \*5. As discussed above, however, the Ohio Supreme Court has rejected the substantial continuity test as a proxy for the mere continuation test. Accordingly, *Nicklau* is not persuasive authority.

In conclusion, there is no genuine issue of material fact as to whether VTC and Visi-Trak Worldwide have common ownership. Accordingly, even assuming that Visi-Trak Worldwide cannot rely on the order confirming VTC's bankruptcy, which discharged Mickowski's patent

judgment claim and which was in effect when Visi-Trak Worldwide purchased VTC's remaining assets, Mickowski has failed to articulate a basis for holding Visi-Trak Worldwide liable as a successor to VTC's liability for the unpaid patent judgment.

**V**
**CONCLUSION**

For all the foregoing reasons, we **AFFIRM** the district court's order of June 7, 2004, granting summary judgment in favor of Visi-Trak Worldwide, LLC.