Judge LEVAL concurs in the majority opinion and in a separate concurring opinion.
JOHN M. WALKER, Jr., Chief Judge.
New York State sued National Service Industries, Inc. (“NSI”) under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (“CERCLA”), 42 U.S.C. §§ 9601 et seq., to recover the costs of closure and remediation of the Blydenburg Landfill in Islip, New York. In granting summary judgment for New York, the District Court for the Eastern District of New York (Jacob Mishler, District Judge) applied the substantial continuity test for successor liability articulated in B.F. Goodrich v. Betkoski, 99 F.3d 505 (2d Cir.1996), and held that NSI, which had purchased all of Serv-All Uniform Rental Corporation, Inc.’s (“Serv-All”) assets, was the successor to Serv-All and was therefore responsible for Serv-All’s CERCLA liability. See New York v. Nat’l Servs. Indus., 134 F.Supp.2d 275, 280-81 (E.D.N.Y.2001). NSI appeals the grant of summary judgment in favor of New York on the basis that, among other reasons, Betkoski is no longer good law after the Supreme Court’s decision in United States v. Bestfoods, 524 U.S. 51, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). We agree that, after Bestfoods, the substantial continuity test cannot be applied to determine successor liability under CERCLA.
BACKGROUND
Because our resolution of this appeal does not involve analysis of most of the underlying facts of this case, we provide only a sketch of the events which led to the present suit and direct those who may be interested in greater detail to the opinion below. See Nat’l Servs. Indus., 134 F.Supp.2d at 276-77.
From 1962 to 1988, Serv-All operated an industrial garment rental service. Id. at 276. As part of its business, it dry cleaned garments at a facility that was owned separately by Serv-All’s two principals. In June 1978, Serv-All arranged for the disposal of several 55-gallon drums of liquid waste that contained perchloroethylene (“PCE”), a solvent used in the dry-cleaning process. The drums were deposited at the Blydenburgh Landfill in Islip, New York. In 1983 the landfill was listed in the New York Registry of Hazardous Waste Sites and in 1987 it was added to the federal National Priority List of contaminated sites. As of September 13, 2001, New York had spent at least $10,894,271 to clean up the landfill. The parties agree that because Serv-All arranged for disposal of wastes at the landfill, it is “potentially responsible” for the cost of cleaning up the landfill.
In 1988, NSI (then known as “Initial Service Investments”) entered into an “Asset Sale Agreement,” whereby it agreed to purchase Serv-All’s customer contracts, customer lists, service inventory, accounts receivable, trucks, insulated jackets bearing the name Serv-All and the right to use or retire Serv-All’s name. Id. at 278-79. Serv-All warranted that the asset transfer would be “sufficient to meet the needs” of Serv-All’s customers. The sale price was based on Serv-All’s revenues as an ongoing operation, as determined by the weekly revenues for the six weeks preceding and following the purchase. The purchase price was approximately $2,229,000. The owners of Serv-All covenanted that they would not compete with NSI for seven years.
*684 On the date of the purchase, Serv-All adopted a plan of liquidation, which it carried out shortly thereafter. Id. at 279. NSI tried to make the transition from Serv-All to NSI as seamless as possible by employing the Serv-All drivers, using trucks which still bore the name Serv-All, using Serv-All on its letterhead and taking over the Serv-All telephone number. Id.
The district court held that “NSI’s operations were a substantial continuation of Serv-All’s business, and thus, NSI is subject to successor liability for Serv-All’s environmental infractions.” Id. at 280-81. In particular, the district court held that NSI was liable under CERCLA for the clean-up cost at the Blydenburgh Landfill. Id.
DISCUSSION
We are faced with the question of whether, in the context of CERCLA, the substantial continuity rule for successor liability that we adopted in Betkoski remains good law after the Supreme Court’s decision in Bestfoods. We hold that it does not.
CERCLA makes any “person” who is the present or past owner or operator of a contaminated facility or a generator or transporter of the hazardous substances that pollute a facility, liable for the cost of cleaning up the facility. 42 U.S.C. § 9607(a). “Person” is defined by CERC-LA to include corporations and other business organizations. See id. § 9601(20)-(21). However, CERCLA does not provide rules for when corporations that are related to the responsible corporation should be held liable.
In the instant case, as it was in Betkoski, the question is whether a corporation that purchased the assets of a company liable for environmental response costs under CERCLA should be held liable for those same costs as a successor corporation. In Bestfoods, the question was somewhat different: it asked when a parent corporation should be held responsible for the CERC-LA liabilities of its subsidiary. Bestfoods, 524 U.S. at 55, 118 S.Ct. 1876. Because the analysis of parent-subsidiary liability in Bestfoods bears on our analysis of successor liability here, we consider whether the rule of successor liability we adopted in Betkoski is consistent with the Supreme Court’s analysis in Bestfoods.

A. Bestfoods -

Bestfoods involved an effort by the United States to recover under CERCLA the cost of remediating a facility near Muskegon, Michigan. Id. at 57-58, 118 S.Ct. 1876. In 1957, Ott Chemical Company had begun to manufacture chemicals at the facility. Id. at 56, 118 S.Ct. 1876. In 1965, the Bestfoods corporation (then known as CPC International, Inc.), created a subsidiary corporation that purchased Ott Chemical. The subsidiary corporation (also called Ott Chemical) continued to manufacture chemicals until 1972, when Bestfoods sold it to an unrelated company. Id. The district court held that Bestfoods was liable under CERCLA because it had “operated” the facility through its subsidiary. CPC Int’l, Inc. v. Aerojet-Gen. Corp., 777 F.Supp. 549, 572 (W.D.Mich.1991). In particular, the district court reasoned that Bestfoods had operated the facility through its subsidiary because it had selected the subsidiary’s board and populated its executive ranks with Bestfoods officials. Id. at 573. The Sixth Circuit reversed en banc. United States v. Cordova Chem. Co., 113 F.3d 572 (1997). It held, seven judges to six, that a parent corporation could only be liable for the actions of its subsidiary if the state common law rules for piercing the corporate veil were met or if the parent had directly *685 participated in the operation of the facility. Id. at 580.
The Supreme Court vacated the circuit’s en bane opinion and remanded. The Court held that “CERCLA is [ ] like many another congressional enactments in giving no indication that ‘the entire corpus of state corporation law is to be replaced simply because a plaintiffs cause of action is based upon a federal statute.’ ” Bestfoods, 524 U.S. at 63, 118 S.Ct. 1876 (quoting Burks v. Lasker, 441 U.S. 471, 478, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979)). The “failure of [CERCLA] to speak to a matter as fundamental as the liability implications of corporate ownership demands application of the rule that ‘in order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law.’ ” Id. (quoting United States v. Texas, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993)). The Supreme Court rejected the district court’s test for a parent corporation’s derivative liability because that test “disregard[ed] entirely ... time-honored common law rule[s].” Id. at 70, 118 S.Ct. 1876.

B. Betkoski and the Substantial Continuity Test -

In considering the substantial continuity test, we take from Bestfoods the principle that when determining whether liability under CERCLA passes from one corporation to another, we must apply common law rules and not create CERCLA-specific rules. Because the substantial continuity test adopted in Betkoski departs from the common law rules of successor liability, Betkoski is no longer good law.
As we described in Betkoski, the “traditional common law rule states that a corporation acquiring the assets of another corporation only takes on its liabilities if any of the following apply: the successor expressly or impliedly agrees to assume them; the transaction may be viewed as a de facto merger or consolidation; the successor is the ‘mere continuation’ of the predecessor; or the transaction is fraudulent.” 99 F.3d at 519 (quoting United States v. Carolina Transformer Co., 978 F.2d 832, 838 (4th Cir.1992)); see also Fletcher, Cyclopedia of the Law of Private Corporations § 4892.75. The exception at issue here is the “mere continuation” exception. See Betkoski, 99 F.3d at 519. Betkoski described the “mere continuation” test as the “common law test (sometimes referred to as the identity test), which requires the existence of a single corporation after the transfer of assets, with an identity of stock, stockholders, and directors between the successor and predecessor corporations.” Id. at 519 (citing Carolina Transformer, 978 F.2d at 838).
Noting that the substantial continuity test (sometimes referred to as the “continuity of enterprise” approach) had been followed by the Supreme Court in the labor law context, in Betkoski we contrasted that doctrine with the mere continuation rule. Rather than considering ownership, the substantial continuity test focuses on the continuity of the business: Whether the “successor maintains the same business, with the same employees doing the same jobs, under the same supervisors, working conditions, and production processes, and produces the same products for the same customers.” Id.
We adopted the substantial continuity test because “CERCLA is entitled to a construction that advances its primary goals [and] the substantial continuity test is more consistent with [those] goals [and is thus] superior to the older and more inflexible ‘identity’ rule.” Id. Accordingly, we held the substantial continuity test to be “the appropriate legal test for successor liability under CERCLA.” Id. In Betkoski we were not applying general common law *686 principles of corporate law but rather adopting a special rule for use in CERC-LA cases that departed from those principles.
New York argues that the substantial continuity test is simply a refined version of the traditional mere continuation exception. New York is correct that, unlike the novel rule adopted by the district court in Bestfoods, there is some prior precedent for the substantial continuity rule and the rule is generally presented as a variant of the mere continuation exception. However, the substantial continuity test is not a sufficiently well established part of the common law of corporate liability to satisfy Bestfoods ’ dictate that common law must govern. We briefly describe the current state of the substantial continuity doctrine.
Within federal law, the substantial continuity doctrine is well established in the area of labor law. See, e.g., Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 43-45, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987). However, the labor law cases are particular to the labor law context and therefore have not been and cannot easily be extended to other areas of federal common law. In Textile Workers Union v. Lincoln Mills, the Supreme Court held that section 301 of the Labor Management Relations Act “authorizes federal courts to fashion a body of federal law for the enforcement of [ ] collective bargaining agreements.” 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Thus, the rules that federal courts and the Supreme Court have adopted in the labor law context do not necessarily reflect general federal common law but rather represent law fashioned for the purpose of enforcing section 301. See Golden State Bottling Co. v. NLRB, 414 U.S. 168, 182 n. 5, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973) (contrasting the “perimeters of the labor-law doctrine of suc-cessorship” with the general rules governing asset purchase agreements).
Furthermore, some of the labor law substantial continuity cases have not involved asset purchases. See John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 551, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) (using “substantial continuity” in the case of a merger to assess whether labor agreement should apply after the merger). Thus, in the labor law context the doctrine is not part of the common law “mere continuation” exception. Finally, even where the labor cases did involve an asset purchase, the focus was not on whether the successor corporation should be responsible for general corporate liabilities but whether the successor had a duty to bargain with the same workforce which had previously voted to bargain collectively with the predecessor corporation. Thus, in Fall River Dyeing & Finishing Corp v. NLRB, the test was employed to determine whether “those employees who have been retained will understandably view their job situations as essentially unaltered.” 482 U.S. at 43, 107 S.Ct. 2225 (1987) (quoting Golden State Bottling Co., 414 U.S. at 184, 94 S.Ct. 414).
The substantial continuity doctrine has also been applied in a few product liability cases. In Betkoski, we pointed to Mozingo v. Correct Mfg. Corp., where the Fifth Circuit applied the doctrine to hold an asset purchaser liable for an injury that occurred before the purchase. 752 F.2d 168, 175 (5th Cir.1985). The Fifth Circuit characterized the doctrine as “in the nature of an expansion of the mere continuance exception to the rule of non-liability” for asset purchasers. Id. But the Mozingo Court was applying Mississippi law and in Betkoski we were relying on federal common law.[1] See also Cyr v. B. Offen & Co., *687 501 F.2d 1145, 1153-54 (1st Cir.1974) (adopting substantial continuity doctrine where New Hampshire law applied to hold asset purchaser liable for product injuries of predecessor). Perhaps if the substantial continuity doctrine were widely adopted among the states, it might be considered absorbed into federal common law and thus applied under CERCLA pursuant to the reasoning in Bestfoods in whatever states had not adopted it. However, at present the doctrine has been adopted by only a handful of states. See Fletcher, Cyclopedia of the Law of Private Corporations § 4892.75 (“A few states have loosened the traditional ‘mere continuation’ exception in strict liability cases to focus on continuity of the business or enterprise ... [but] [m]ost courts that have considered the continuation of enterprise exception have refused to adopt it.”).
We thus find that the substantial continuity doctrine is not a part of general federal common law and, following Best-foods, should not be used to determine whether a corporation takes on CERCLA liability as the result of an asset purchase. Our holding is consistent with dicta by the only other Court of Appeals that has considered whether the substantial continuity doctrine survives Bestfoods. See United States v. Davis, 261 F.3d 1, 54 (1st Cir.2001) (noting that Bestfoods “left little room for the creation of a federal rule of liability under the statute”).
Because we find that the substantial continuity doctrine of Betkoski is no longer good law and reject the argument that the doctrine is part of the federal common law for CERCLA purposes, we must vacate the district court’s grant of summary judgment for plaintiff New York State.
CONCLUSION
For the forgoing reasons, we Vaoate the grant of summary judgment for plaintiff and Remand for further proceedings.

. In Bestfoods, the Supreme Court expressly declined to decide whether courts should ap *687 ply state or federal common law under CERCLA. See 524 U.S. at 64 n. 9, 118 S.Ct. 1876. In a per curiam opinion issued shortly after our opinion in Betkoski, we explained that we had selected federal law rather than borrowing state law because of "our concern that allowing state law rules such as the inflexible and easily evaded 'identity' rule to control the question of successor liability would defeat the goals of CERCLA." B.F. Goodrich v. Betkoski, 112 F.3d 88, 91 (1997) (per curiam). Because we find that, as a matter of federal law, the substantial continuity doctrine cannot be applied, the analysis prescribed by United States v. Kimbell Foods, Inc., 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), to determine whether state or federal common law should be used would likely come out differently now. In particular, a state’s "mere continuity” rule is unlikely to “frustrate specific objectives of the federal program[],” id. at 728-29, 99 S.Ct. 1448, because it is likely to be the same as the federal rule. In fact, if the state had adopted the substantial continuity test, as the Mozingo court found that Mississippi had, then the state common law might actually facilitate CERCLA's objectives.