## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

## NICHOLS GAS & OIL, INC., Defendant.

No. 05–CV–6482CJS.

United States District Court, W.D. New York.

Sept. 28, 2007.

Elizabeth Grossman, U.S. Equal Employment Opportunity Commission New York District Office, New York, NY, Maria Salacuse, Equal Employment Opportunity Commission, Boston, MA, for Plaintiff.

Paul F. Keneally, Underberg & Kessler LLP, Rochester, NY, R. Scott Deluca, Underberg & Kessler LLP, for Defendant.

### DECISION & ORDER

MARIAN W. PAYSON, United States Magistrate Judge.

### PRELIMINARY STATEMENT

By order dated March 17, 2006, this matter has been referred to the undersigned for the supervision of pretrial discovery and the hearing and disposition of all non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(A) and (B). (Docket # 11).

The Equal Employment Opportunity Commission (the "EEOC") initiated this action on September 14, 2005, on behalf of ten claimants against defendant Nichols Gas & Oil, Inc. ("Nichols"). The EEOC claims that since 1999 Nichols subjected the claimants to sexual harassment, retaliation and constructive discharge, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Docket # 1). Nichols filed an Answer to the Complaint on March 27, 2006 (Docket # 12), after which the parties commenced discovery. (Docket # # 16, 17). In response to the EEOC's discovery requests, on August 23, 2006, Nichols disclosed an asset purchase agreement executed on November 30, 2005 relating to the sale of various of Nichols's assets to Townsend Oil Corporation ("Townsend").

Currently before the Court is the EEOC's motion for leave to amend its Complaint in order to add Townsend as a defendant in this matter.[1] (Docket # 23). Nichols opposes the motion on the grounds of futility. (Docket # 30). Oral argument was conducted on April 4, 2007. Subsequent to the argument, this Court granted

1. The motion was timely filed under this Court's scheduling order. (Docket # 19).

Townsend's request to submit papers opposing EEOC's motion, which it has reviewed and considered, along with those submitted by the EEOC and Nichols, in reaching its determination on the pending motion. (Docket # # 33, 36–38).

### DISCUSSION

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that once the time for amending a pleading as of right has expired, a party may request leave of the court to amend, which "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). If the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits. *See United States ex rel. Maritime Admin. v. Continental Illinois Nat'l Bank and Trust Co. of Chicago,* 889 F.2d 1248, 1254 (2d Cir.1989). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

■ While the court retains discretion to grant or deny leave to amend under Rule 15(a), "[the] outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.* at 182, 83 S.Ct. 227; *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *Evans v. Syracuse City Sch. Dist.,* 704 F.2d 44, 46 (2d Cir.1983).

■ Of particular importance in considering a party's motion to amend is whether the non-moving party will be prejudiced by such amendment. According to the Second Circuit, when evaluating prejudice, a court must consider "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993) (citations omitted).

■ "One of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action." *Krumme v. WestPoint Stevens Inc.,* 143 F.3d 71, 88 (2d Cir.), *cert. denied,* 525 U.S. 1041, 119 S.Ct. 592, 142 L.Ed.2d 534 (1998) (internal quotation omitted). Mere delay, however, unaccompanied by either bad faith or undue prejudice, does not warrant denial of leave to amend. *Block v. First Blood Assocs.,* 988 F.2d at 350 (citing *State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981)).

In addition, when considering whether to permit the inclusion of an additional party, Rule 20(a) of the Federal Rules of Civil Procedure provides:

All persons … may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20(a). Courts have interpreted the requirements of Rule 20(a) liberally

so as to promote judicial economy and to allow related claims to be tried within a single proceeding. *See, e.g., Barr Rubber Products Co. v. Sun Rubber Co.,* 425 F.2d 1114, 1127 (2d Cir.) (Rule 20 "specifically vests in the district court the discretionary power to make such orders as may be required to prevent delay or prejudice"), *cert. denied,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970); *Liegey v. Ellen Figg, Inc.,* 2003 WL 21361724, *3 (S.D.N.Y.2003) ("requirements of Rule 20(a) should be interpreted liberally"); *Kovian v. Fulton County Nat. Bank and Trust Co.,* 1990 WL 36809, *9 (N.D.N.Y.1990) ("there is no rigid rule as to what constitutes the same series of transactions or occurrences"); *City of New York v. Joseph L. Balkan, Inc.,* 656 F.Supp. 536, 549 (E.D.N.Y.1987) (requirements of Rule 20 are to be "liberally interpreted") (citations omitted).

■■■ Notwithstanding the ordinarily lenient standard, it is well-settled that if the amendment proposed by the moving party is futile, "it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d at 131. The determination of whether a proposed amendment is futile is made under the same standard as that used to consider whether a claim would be subject to a motion to dismiss. *See Hampton Bays Connections, Inc. v. Duffy,* 212 F.R.D. 119, 123 (E.D.N.Y.2003) (citing *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,* 160 F.Supp.2d 657, 666 (S.D.N.Y.2001)). Thus, the court "must view the claim in the light most favorable to the moving party and determine whether there is a colorable claim for relief." *Santiago v. Steinhart,* 1993 WL 410402, *2 (S.D.N.Y.1993).

### A. *The Purchase Agreement*

Nichols and Townsend executed an agreement on November 30, 2005 entitled,

"Purchase Agreement" (the "Agreement"). (Docket # 37, Exhibit ("Ex.") 1). The Agreement was signed by Kevin Brady, as President of Townsend, and Wayne Nichols, in his individual capacity and as President of Nichols Gas & Oil, Inc. (*Id.*). The Agreement provided that Townsend would purchase certain specified assets of Nichols, including its tanks, certain trucks and any inventory and supplies selected by Townsend the day before the closing, as well as Nichols's real property. (*Id.* at ¶¶ 1.1, 1.2 and Ex. A). The Agreement further provided that (1) Townsend would have the exclusive right to use the name "Nichols Gas & Oil," (2) Nichols would execute an agreement not to compete with Townsend's business for a period of five years following the sale and deliver its customer list to Townsend, and (3) the parties would execute agreements providing for Wayne Nichols's continued employment and his wife's consulting services after the sale. (*Id.* at ¶¶ 1.1, 1.3, 12.1).

A schedule was attached to the Agreement identifying pending or threatened lawsuits, claims and investigations. (*Id.* at ¶ 6.10 and Schedule ("Sch.") 6.10). This action was the only item disclosed on that schedule and was identified as follows:

> *Elisa Foss v. Nichols Gas & Oil, Co.* Charge No. 165–2003–00767 Date of Filing of EEOC Charge: Sept. 12, 2003 Date of Probable Cause Determination: June 9, 2005 Complaint Filed in United States District Court, Western District of New York on September 14, 2005, Docket No. 06:05–CV–06482–cjs(P)

(*Id.* at Sch. 6.10).

### B. *The Appropriate Legal Standard*

■■■ The EEOC seeks to add Townsend as a defendant to its action against Nichols under a theory of successor liability.[2] In analyzing that issue, the Court

---

**2.** The EEOC does not claim that Townsend

engaged in the conduct complained of in its

begins with the well-established federal common law principle that a purchaser of corporate assets, rather than stock, generally does not assume the liabilities of the selling corporation. *Graham v. James,* 144 F.3d 229, 240 (2d Cir.1998) ("[u]nder ... federal law, the general rule is that a corporation that acquires the assets of another corporation is not liable for the torts of its predecessor"). Certain exceptions to that rule have been recognized by the courts, and it is the scope and applicability of those exceptions that the parties and Townsend dispute.

The EEOC maintains that the appropriate standard to apply in this case is that commonly referred to as the "substantial continuity" test, which examines whether there is a substantial continuity of identity in the business following an asset purchase. (Docket # 39 at 4–6). *See Forde v. Kee Lox Mfg. Co., Inc.,* 584 F.2d 4, 5–6 (2d Cir.1978) (citing *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 551, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)). Townsend disagrees and urges the Court to apply a narrower test requiring proof that (1) the successor expressly or impliedly agreed to assume the liabilities, (2) the transaction was actually a de facto merger or consolidation, (3) the successor is the "mere continuation" of its predecessor, or (4) the transaction was fraudulent.[3] (Docket # 36 at 9–13). *See New York v. National Servs. Indus., Inc.,* 352 F.3d 682, 685 (2d Cir. 2003). The parties and Townsend apparently agree that were the narrower test to be applied, the EEOC's motion should be denied in view of the absence of any evidence in the record that any of these four circumstances exist.[4] I concur.

■ In the context of a Title VII action, successor liability operates as "an extra-contractual remedial tool for imposing certain labor obligations on a new employer that has taken over operations of an old employer." *Long v. AT & T Info. Sys., Inc.,* 733 F.Supp. 188, 208 (S.D.N.Y. 1990) (quoting *American Bell Inc. v. Federation of Tel. Workers of Pa.,* 736 F.2d 879, 888 (3d Cir.1984)) (acknowledging doctrine applies to Title VII cases). In order to effectuate Title VII's broad remedial purposes, the law in this Circuit for at least two decades permitted an aggrieved employee to hold a successor corporation liable for its predecessor's illegal employment actions under Title VII upon a showing of a "substantial continuity of identity in the business enterprise before and after the change." *Forde v. Kee Lox Mfg. Co., Inc.,* 584 F.2d at 6. *See also Fennell v. TLB Plastics Corp.,* 1989 WL 88717, *2 (S.D.N.Y.1989); *Wells v. Continental Baking Co.,* 1987 WL 10715, *1 (W.D.N.Y. 1987); *EEOC v. Sage Realty Corp.,* 507 F.Supp. 599, 611–12 (S.D.N.Y.1981); *Lobos v. Aeromexico,* 1978 WL 180, *6 (S.D.N.Y. 1978).

The question before this Court is whether that law is still "good law" following the Supreme Court's 1998 decision in *United States v. Bestfoods,* 524 U.S. 51, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998), which refused to alter common law principles of limited liability in order to impose liability on a parent corporation for the environmental liabilities of its subsidiary. Townsend ar-

Complaint against Nichols.

**3.** Nichols does not directly address the dispute between the EEOC and Townsend regarding the appropriate standard, although its memorandum of law analyzes the issue of whether Townsend should be added as a de-

fendant under the substantial continuity doctrine. (Docket # 30–1 at 6–10).

**4.** The EEOC's memorandum in reply to Townsend's simply does not discuss the facts of this case judged under the narrower test. (*See* Docket # 39).

gues that it is not, citing the Second Circuit's subsequent decision in *New York v. National Servs. Indus., Inc.,* 352 F.3d 682 (2d Cir.2003). The EEOC maintains to the contrary, contending that Bestfoods and National Servs. Indus., Inc. should be limited to cases arising under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), the statute under which the claims arose in both cases.

While both positions are well argued, neither is wholly correct. In my opinion, the EEOC's position is too narrow, and Townsend's is too far-reaching. Beginning with the EEOC's, it is too cramped an interpretation of Bestfoods to limit its scope to the realm of specialized environmental statutes, or to CERCLA in particular. In Bestfoods, the court relied on the fact that the CERCLA statute was silent on the issue of derivative liability in rejecting what the court perceived as the plaintiff's attempt to "fundamentally alter[ ] common-law standards of limited liability" in the parent-subsidiary relationship. *United States v. Bestfoods,* 524 U.S. at 69, 118 S.Ct. 1876. Nothing in the decision states or suggests that its holding should be read to apply only to CERCLA, rather than to other statutes that are similarly silent as to derivative corporate liability. On that point, I agree with Townsend.

I cannot concur with Townsend, however, that Bestfoods should be read so broadly as to abrogate the principle recognized in Forde that the "substantial continuity" test applies to determine successor or derivative corporate liability in a Title VII case. Indeed, the Second Circuit has declined to read Bestfoods as overruling the application of the substantial continuity test in all cases arising under statutes that do not expressly provide for successor liability. *See National Servs. Indus., Inc.,* 352 F.3d at 686. Specifically, in National

Services, while the court acknowledged that the doctrine of substantial continuity is not so well-established to be considered "part of general federal common law," it recognized that, by contrast, "the substantial continuity doctrine is well established in the area of labor law." *Id.* at 686. A question left open by National Services is whether the substantial continuity doctrine is also well-established in the area of Title VII employment law.

 I conclude that it is. First, a substantial and consistent body of caselaw has evolved over several decades applying the doctrine of substantial continuity in Title VII cases. *See, e.g.,* cases cited *supra* at 7 and *Molfese v. Fairfaxx Corp.,* 2006 WL 1438582, *3 (D.Conn.2006); *Rowe Entm't, Inc. v. William Morris Agency, Inc.,* 2005 WL 22833, *79 (S.D.N.Y.) (acknowledging the applicability of doctrine in Title VII cases), aff'd, 167 Fed.Appx. 227 (2d Cir.2005), *cert. denied,* —— U.S. ——, 127 S.Ct. 283, 166 L.Ed.2d 152 (2006); *EEOC v. Barney Skanska Constr. Co.,* 2000 WL 1617008, *2–3 (S.D.N.Y.2000); *Abdel–Khalek v. Ernst & Young, L.L.P.,* 1999 WL 190790, *7 (S.D.N.Y.1999) (acknowledging the applicability of doctrine in Title VII cases); *Shevack v. Litton Applied Tech.,* 1998 WL 512959, *2 (S.D.N.Y. 1998). That authority both predates and postdates Bestfoods and National Services and can be considered "ingrained in our ... legal system[ ]." *See Bestfoods,* 524 U.S. at 61, 118 S.Ct. 1876 (internal quotations omitted).

Second, such a rule promotes many of the same interests that the Supreme Court has found sufficiently strong to justify application of the substantial continuity test in the labor law context. *See National Servs. Indus., Inc.,* 352 F.3d at 690 (Leval, J., concurring). *In Golden State Bottling Co., Inc. v. NLRB,* 414 U.S. 168, 94 S.Ct.

414, 38 L.Ed.2d 388 (1973), the Court addressed the following issue:

> whether the bona fide purchaser of a business [in an asset purchase], who acquires and continues the business with knowledge that the predecessor had committed an unfair labor practice in the discharge of an employee, may be ordered by the [NLRB] to reinstate the employee with backpay.

*Id.* at 170, 94 S.Ct. 414. The Court answered in the affirmative, citing several important policy considerations served by such a decision. One such consideration was "the employees' legitimate expectation ... that the unfair labor practices will be remedied" and the "labor unrest" that may result from a successor's failure to do so. *Id.* at 184, 94 S.Ct. 414. Along with the interest in "avoidance of labor strife," the Court cited the strong interests in "prevention of a deterrent effect on the exercise of rights guaranteed by the [NLRA] and protection for the victimized employee" as justification for the substantial continuity test. *Id.* at 185, 94 S.Ct. 414. Those same interests are served by Title VII and likewise counsel application of the substantial continuity test to determine successor liability in Title VII cases.

## C. *Application of the Substantial Continuity Test*

In determining whether successor liability is appropriate under the substantial continuity test, courts are generally guided by three factors: (1) whether the successor had notice of the claim prior to the acquisition; (2) whether the successor substantially continued the business operations of its predecessor following the acquisition; and (3) whether the predecessor is able to provide the relief sought. *See, e.g., EEOC v. Barney Skanska Constr. Co.*, 2000 WL 1617008 at *2; *Abdel-Khalek v. Ernst & Young L.L.P.*, 1999 Wl 190790 at *7 (S.D.N.Y. 1999); *Shevack*

*v. Litton Applied Tech.*, 1998 WL 512959 at *2 (S.D.N.Y. 1998); *Fennell v. TLB Plastics Corp.*, 1989 WL 88717, *2 (S.D.N.Y. 1989). *See also EEOC v. Mac-Millan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir. 1974) (enumerating nine related factors). "No one factor is controlling, and it is not necessary that each factor be met to find successor liability." *Barney Skanska Constr. Co.*, 2000 WL 1617008 at *2. Weighing each of the factors in this case, I find that the EEOC's allegations are sufficient to warrant the addition of Townsend as a successor defendant.

Turning first to the question of notice, the EEOC alleges in its proposed amended complaint that Townsend had notice of this litigation (Docket # 24, Ex. A at ¶ 10), and the discovery conducted to date appears to confirm that assertion. As noted above, the Agreement itself contained a schedule identifying pending claims and litigations. The only item disclosed therein was this lawsuit, which was identified by caption, docket number and date of filing. To argue, as Nichols has, that Townsend did not have "full notice and complete knowledge regarding the claims asserted in this matter" (*see* Docket # 30–1 at 7) sidesteps the obvious fact that a simple trip to the courthouse would have disclosed the scope of the claims made and relief sought by the EEOC. *See Fennell*, 1989 WL 88717 at *4 (relying on, inter alia, identification of claims in litigation schedule appended to asset purchase agreement to find that purchaser had notice). In any event, Nichols himself testified that at the time of the sale, he spoke directly with Townsend President Kevin Brady regarding the case, a litigation that he described as "general knowledge" within the industry. (Docket # 24, Ex. F at 178, 180–182, 184–86).

The second factor—substantial continuity of business operations—also weighs in

favor of the proposed amendment. To assess this factor, the Court must examine several aspects of the successor's business operations following the acquisition, including whether it uses the same physical facility; whether it uses the same or substantially the same work force; whether it uses the same or substantially the same personnel; whether the same jobs exist under substantially the same working conditions; whether it uses the same machinery, equipment, and methods of production; and whether it produces the same product. *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d at 1094. *See Forde*, 584 F.2d at 6 (citing *MacMillan*).

As to this factor, the EEOC's proposed amended complaint alleges, inter alia, that Townsend: (1) purchased all of the real property and the majority of the assets of Nichols; (2) retained all of Nichols's employees, including Wayne Nichols; (3) engaged in the same business as Nichols; and, (4) operated from the same physical facility. (Docket # 24, Ex. A at ¶¶ 7–8). On that basis, the EEOC asserts that "[t]here has been a substantial continuity of business operations by [Townsend] of the business operations of [Nichols] since the date of purchase." (*Id.* at ¶ 9). I find that these assertions, the factual basis for which has been explained in some detail in the EEOC's moving papers, adequately allege substantial continuity of business operations.

As with the question of notice, the EEOC places substantial reliance on the terms of the Agreement itself, as well as the testimony of Wayne Nichols, to satisfy this second inquiry. The Agreement demonstrates that the sale was predicated upon, among other things, the continued employment by Townsend of Wayne Nichols, the predecessor's President and owner, and his agreement not to compete with Townsend's business for a period of five

years. The Agreement also provided that Nichols's wife would remain as a consultant to Townsend and, although the Agreement was silent on the issue of other Nichols's employees, Nichols testified that they all remained as employees of Townsend, working out of the same physical facility and providing the same general service, following the sale. (*See* Docket # 24, Ex. F at 187, 192, 195, 197–98, 200, 281–82). The Agreement required Nichols to deliver its customer list to Townsend, and Townsend continued to distribute fuel to Nichols's former customers following the sale. (*Id.* at 192, 203). The deliveries were initiated from the same physical facility, which Townsend had purchased, along with its equipment, supplies and most of its trucks. (*Id.* at 168–69; Docket # 24, Ex. D). In fact, shortly after the sale, a letter was sent to Nichols's former customers signed by Wayne Nichols and Kevin Brady advising them of the sale and assuring them that "there are no planned changes in personnel at the Nichols facility," that they "will still be able to call in and talk to the same individuals [they] are accustomed to on a local basis" and that payment for service could continue to be made at the same facility, as well as at Townsend's headquarters in a separate location. (Docket # 24, Ex. D). Although Townsend has adduced evidence that its overall business operations were more comprehensive than Nichols's had been (Docket # 37 at ¶ 4), I find that the second factor—substantial continuity of business operations—weighs in the EEOC's favor considering that Nichols's pre-acquisition business was conducted by Townsend after the acquisition in substantially the same manner by substantially the same personnel at the same physical facility, using much of the same equipment and supplies.

The final factor—whether Nichols has the ability to provide the requested relief—does not weigh in favor of either the

EEOC or Townsend. The record simply contains scant, if any, relevant information on this issue. While Nichols has produced a balance sheet as of November 13, 2006 (Docket # 24, Ex. G), it has not produced any records pertaining to its financial condition at the time of the sale. Courts are divided over whether to assess the predecessor's financial condition at the time of the sale, *see, e.g., Barney Skanska Constr. Co.,* 2000 WL 1617008 at *3, or at the time of the motion or trial, *see, e.g., Abdel–Khalek,* 1999 WL 190790 at *8. I need not now determine which period is more properly examined because I find that the record is devoid of any evidence to suggest that Nichols had the ability at the time of the sale, or has it now, to satisfy a potential monetary judgment in the amount of full statutory damages.[5] As to the former, Nichols has testified that he used the sale proceeds to satisfy business debts, liens and mortgages (Docket # 24, Ex. F at 246–47), and as to the latter, the balance sheet discloses insufficient assets to satisfy such a judgment (at least as of November 2006). (Docket # 24, Ex. G). More discovery on this issue is plainly appropriate, following which Townsend may well be able to demonstrate Nichols's financial capacity to provide relief. At this stage, however, where such information appears uniquely within the possession of Nichols, and the production of which has been resisted by Nichols, the EEOC should not be faulted for its inability to adduce affirmative proof to satisfy this factor.

In sum, I determine that the EEOC's allegations are sufficient to justify the addition of Townsend as a party defendant under the doctrine of successor liability. The factors of notice and substantial continuity of business operations weigh in favor of the proposed amendment, while the third factor—ability to provide relief— is a neutral consideration. This balance, coupled with the lack of prejudice that will result from the addition of another party in the relatively early stages of this litigation, persuades me to grant the EEOC's motion to amend.

## CONCLUSION

For the foregoing reasons, the EEOC's motion for leave to amend its Complaint in order to add Townsend as a successor defendant in this matter **(Docket # 23) is GRANTED.**

The EEOC is directed to serve and file the amended complaint by no later than twenty (20) days from the entry of this Order.

**IT IS SO ORDERED.**

---

5. I reject the EEOC's argument that Nichols's inability to satisfy injunctive relief means that this factor weighs in its favor. (Docket # 39 at 8–9). The proposed amended complaint does not allege that any of the alleged offending practices occurred following the sale, and none of the claimants worked for Townsend at any time following the sale. On this record, I believe that substantial questions exist as to the appropriateness of an award of injunctive relief against Townsend.